UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICKY DON DEBRICK,<br><br>Defendant. | Civil Action No. 24-1053 (JEB) |

## MEMORANDUM OPINION

Americans who live abroad sometimes try to store their money in offshore accounts to evade their taxes. Such efforts are upended, however, when their foreign banking institutions report them and the Internal Revenue Service comes to collect. In this case, the United States seeks $2,057,157.44 from one such France-based consultant, Ricky Don Debrick, for his willful failure to report his interest in foreign financial accounts in 2010 and 2011 pursuant to the Report of Foreign Bank and Financial Accounts (FBAR) — a provision that requires taxpayers with foreign accounts that exceed $10,000 in aggregate value to report them to the Government each year. See ECF Nos. 1 (Compl.) at 1–2; 13-1 (DJ Mot.) at 6. As Debrick never responded to the Complaint following proper local service, the Clerk of Court entered a default on February 4, 2025. See ECF No. 10 (Entry of Default). The Government now moves for default judgment pursuant to Federal Rule of Civil Procedure 55. See DJ Mot. Since the Government has sufficiently demonstrated that the allegations in its Complaint warrant such judgment, the Court will grant the Motion.

1

I.  **Background**

Given the default in this case, the Court accepts the facts alleged in the Government's Complaint as true. Debrick is a United States citizen who lives in Chateaufort, France, and works as an oil and gas consultant. See Compl., ¶¶ 4, 14; ECF No. 9-1 (Kristina M. Portner Decl.), ¶ 3. He formed International Oil & Gas Associates, Ltd. (IOGAL) in 2000 and remains its 100% shareholder and an authorized signatory. See Compl., ¶ 14. Defendant placed IOGAL's assets, comprised of corporate shares, in a Jersey trust that he created called Alexsam. Id., ¶ 15. He then established and moved those assets to another Jersey trust named Masalex in 2009 — a grantor trust that Defendant maintained control over. Id., ¶¶ 16, 17. The only external transfers into these accounts came from Debrick's consulting income. Id., ¶ 17.

Defendant had at least six foreign financial accounts during 2010 and 2011. Id., ¶¶ 19, 23. Those accounts included RBS Coutts (Swiss), Hyposwiss (Swiss), Banque Populaire (French), Societe Generale (French), Credit Suisse (Swiss), and Credit Agricole (French). Id., ¶ 23. The aggregate balance of these accounts totaled $2,896,983 during calendar year 2010 and $3,407,821 in 2011, id., ¶¶ 25–26, bringing him well within the FBAR ambit. See id., ¶¶ 6, 24, 27; 31 C.F.R. §§ 1010.350(a), 1010.306(c). Yet Defendant reported only three accounts totaling $28,883 in his 2010 FBAR filing and did not timely file an FBAR for 2011. Id., ¶ 18.

Hyposwiss shook things up when it disclosed its relationship with Defendant to the IRS as a part of the Swiss Bank Program's non-prosecution agreement. Id., ¶¶ 20, 34. After Hyposwiss's report, Defendant utilized the IRS's Offshore Voluntary Disclosure Program (OVDP) — a now-sunsetted program that allowed qualifying taxpayers to come into compliance by disclosing previously unreported offshore income, assets, and interests — to file an amended FBAR for 2010 and an FBAR for 2011. Id., ¶¶ 20, 21. Debrick could have resolved his

situation by paying a reduced penalty, but he refused to do so and then attempted to transfer to OVDP's non-willful program by claiming under penalty of perjury that he had no control over, and thus did not need to report accounts held by, IOGAL or the Jersey trusts. Id., ¶ 35. That attestation was false. He exercises complete control over IOGAL and the Alexsam and Masalex trusts according to documents he finally submitted to the IRS after several delays. Id.

The IRS assessed FBAR penalties against Debrick on April 14, 2022, for calendar years 2010 and 2011. Id., ¶ 38. Those assessments amounted to $782,927 for 2010 and $920,984 for 2011. Id., ¶ 43. That combined balance has grown to $2,057,157.44 as of April 10, 2025, through interest at 1% per year and late-payment penalties at 6% per year, accrued pursuant to 31 U.S.C. § 3717. See DJ Mot. at 6; ECF No. 13-2 (Chad A. Presnell Decl.), ¶¶ 5, 7–10.

**II.    Legal Standard**

A court may enter default judgment when the "party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Once default is entered, the defendant "is deemed to admit every well-pleaded allegation in the complaint." Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); see Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds sub nom. Hughes Tool Co. v. Trans World Airlines, Inc., 409 U.S. 363 (1973); see also 10A Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed. 2021) (defaulting "defendant has no further standing to contest the factual allegations of plaintiff's claim for relief"). Nevertheless, "[m]odern courts are . . . reluctant to enter and enforce judgments unwarranted by the facts," Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir. 1980), and "a district court may still deny an application for default judgment where the allegations of the complaint, even if true, are legally insufficient to make out a claim." Gutierrez v. Berg Contracting Inc.,

2000 WL 331721, at *2 (D.D.C. Mar. 20, 2000); see also United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd., 324 F. Supp. 3d 38, 45 (D.D.C. 2018) ("[T]he defendant['s] default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief.") (second alteration in original) (quoting Jackson v. Corr. Corp. of Am., 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008)).

### III. Analysis

Before assessing the allegations in the Complaint, the Court examines its jurisdiction and the sufficiency of notice.

#### A. Jurisdiction and Venue

This Court has subject-matter jurisdiction on three grounds: (1) 28 U.S.C. § 1355(a), which provides that district courts "have original jurisdiction . . . of any action or proceeding for . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress"; (2) 28 U.S.C. § 1345, which provides the district courts with jurisdiction over proceedings commenced by the United States; and (3) 28 U.S.C. § 1331, which provides the district courts with original jurisdiction over civil actions arising under federal statutes. Venue is also proper here given that Defendant does not reside in the United States. See 28 U.S.C. § 1391(c)(3).

#### B. Notice

The Government was required to provide direct notice "to any person who reasonably appear[ed] to be a potential claimant on the facts known to [it]" and to send such notice "by means reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A). For a defendant residing abroad, service must be made pursuant to Fed. R. Civ. P. 4(f), and the defendant need not be served within the usual 90 days after the complaint is filed. See Fed. R. Civ. P. 4(m). The Government, through French firms, effected service on

4

Defendant at his French home address on December 18, 2024, in accordance with local law. See ECF No. 8 (Alexander Blumrosen Aff.); Portner Decl., ¶ 4.

    C. Merits

Under 31 U.S.C. § 5314(a), a taxpayer must "file reports . . . when the . . . person makes a transaction or maintains a relation for any person with a foreign financial agency." This means that anyone "having a financial interest in, or signature or other authority over, a bank, securities, or other financial account [over $10,000] in a foreign country shall report such relationship . . . for each year in which such relationship exists." 31 C.F.R. §§ 1010.350(a), 1010.306(c). The process for this reporting flows through Form 1040, Schedule B, which directs the taxpayer to Form TD F 90–22.1, which in turn provides instructions for reporting such financial interest. See United States v. McBride, 908 F. Supp. 2d 1186, 1200 n.2 (D. Utah 2012). Willful failure to do so can result in penalties equal to 50% of the value of the undisclosed account or $100,000, whichever is greater. See 31 U.S.C. § 5321(a)(5)(C)(i).

The Government may thus prevail in its request for default judgment by showing that: (1) Debrick was a U.S. citizen (or other qualified person) during 2010 and 2011; (2) he had a financial interest in or signatory authority over the account at issue during those years; (3) the account balance exceeded $10,000; (4) the account was in a foreign country; (5) he failed to disclose the account; (6) the failure was willful; and (7) the amount of the proposed penalty is proper. McBride, 908 F. Supp. 2d at 1201.

The Government has satisfied the above elements. First, Debrick was at the relevant time, and remains today, a U.S. citizen. See Compl., ¶¶ 4, 39. Second, as explained above, he had a clear interest in his six foreign financial accounts. Id., ¶¶ 23, 39. Third, the balance of his accounts for 2010 ($2,896,983) and 2011 ($3,407,821) well exceeds the $10,000 threshold. Id.,

5

¶¶ 23–26, 39. Fourth, each of the six accounts was based in either Switzerland or France. Id., ¶ 23. Fifth, he failed to disclose three accounts. Id., ¶ 31.

The sixth element of willfulness is also clearly shown here. Defendant filed self-prepared FBARs for all years prior to 2011 in addition to his income tax returns (Form 1040), see Compl. ¶¶ 29, 32, so at a minimum he clearly knew that he was subject to the reporting requirements. The Government further alleges that this behavior was a part of Defendant's "pattern of concealing tax information from the United States and other taxing authorities." Id., ¶ 30. On each of his pre-2011 FBARs, for instance, Debrick reported only three or four foreign accounts totaling roughly $20,000. Id., ¶ 32. On his original U.S. income tax returns for 2010 and 2011, he reported neither his consulting income nor his rental income accrued from his three French properties, denied that he was a grantor of a foreign trust, and failed to list his Switzerland accounts. Id., ¶ 31. To French authorities, he also failed to report his consulting income even though he claimed "significant" foreign tax credits from the United States. Id. When Defendant was notified by Credit Suisse in 2009 that it would report its relationship with him to U.S. authorities, he transferred millions of dollars to accounts at other banks: Hyposwiss and RBS Coutts. Id., ¶ 34. Either willful blindness or reckless disregard satisfies the mental state required for this sixth element, and Defendant's actions rise to that level here. McBride, 908 F. Supp. 2d at 1204–205.

As to the seventh element, the Treasury Department's assessment of $2,057,157.44 falls below the maximum penalty permitted by 31 U.S.C. § 5321(a)(5)(C)(i) for FBAR violations.

## IV. Conclusion

The Court thus finds that the Government has met its burden and will impose the default judgment sought. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
Chief Judge

Date: June 10, 2025